IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**CARL LEE JOHNSON, JR.**                                                                 **PLAINTIFF**

V.                                    **CASE NO. 2:23-CV-02059**

**WALMART, INC.**                                                                          **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This Order takes up Defendant Walmart Inc.'s Motion to Dismiss (Doc. 27). The Motion has been fully briefed, with Plaintiff Carl Lee Johnson filing a Response in Opposition (Doc. 32) and Defendant filing a Reply (Doc. 35). For the reasons discussed herein, Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

Broadly put, this case arises out of discrimination that Mr. Johnson alleges he experienced during his employment at Walmart targeting his race and sexual orientation. Mr. Johnson initially filed a claim with the Equal Employment Opportunity Commission, alleging harassment and retaliation, and received his right to sue letter on January 30, 2023. He filed his original complaint (Doc. 3) on May 1, 2023, and an Amended Complaint (Doc. 26) on November 22, 2023. Defendant then filed a Rule 12(b)(6) Motion to Dismiss (Doc. 27), which became ripe on January 17, 2024.[1]

---

[1] Mr. Johnson's representation in this case has a messy history that is worth noting. Initial counsel for Mr. Johnson filed the original complaint in May 2023, asserting claims for race, sex, and age discrimination and a claim for negligent infliction of emotional distress. As the Court stated to counsel in its first Case Management Hearing on October 11, 2023, the complaint was poorly written in several ways, including not pleading basic facts like Mr. Johnson's race, sex, or age.

At the hearing, Mr. Johnson's counsel informed the Court that she was no longer employed at the firm she was previously associated with and was planning to withdraw from representing Mr. Johnson. The Court reminded her of her ethical obligations and made it clear that it would not permit her to withdraw until another attorney had entered

1

## I. BACKGROUND[2]

### A. Allegations of Racial Discrimination and Harassment

In January 2022, Mr. Johnson alleges he was passed over for training opportunities on account of being a black man and did not receive promotional pay; he made written complaints of these incidences to his training manager. (Doc. 26, ¶¶ 11–15, 43, 45–46). In March 2022, he complained to his manager that he was being assigned to additional and more difficult work duties due to his prior complaints and having taken a medical leave of absence that resulted from the harassment he was experiencing. *Id.* at ¶ 47. That same month, one of his coworkers, Jacob Brown, made racial comments and other derogatory remarks to Mr. Johnson. *Id.* at ¶¶ 15, 48. Mr. Johnson complained to his training manager about this behavior. *Id.* at ¶ 48. Nevertheless, on April 16, 2022, Plaintiff filed a written complaint with his training manager that he was continuing to be racially harassed and that management was not taking any action. *Id.* at ¶¶ 16, 49. On April 23,

---

his or her appearance on behalf of Mr. Johnson. The Court also suggested that she inform the new attorney that they should take a careful look at the current complaint due to its inadequacies.

On October 16, 2023, new counsel entered his appearance for Mr. Johnson, and the Court held a second Case Management Hearing on November 8, 2023. At the time of the hearing, no amended complaint had been filed, despite the Court's prior suggestion. The Court granted leave to Plaintiff's then-counsel to amend the complaint, and an Amended Complaint—the operative one for purposes of Motion at bar—was filed November 22, 2023.

Then, on May 3, 2024, Mr. Johnson's attorney moved to withdraw (Doc. 36), stating the attorney-client relationship was "wholly and irreparably broken." The Court permitted counsel to withdraw, (Doc. 38), and on June 12, 2024, the clerk filed an email from Mr. Johnson, advising the Court that he wished to proceed *pro se*.

[2] Due to the posture here, the facts in this Order are mere allegations from Mr. Johnson's Amended Complaint and do not reflect the Court's view on whether they are true.

2

2022, Plaintiff had a meeting with another supervisor or manager regarding the alleged discriminatory conduct from his coworker. *Id.* at ¶¶ 17-18, 50-51. At this meeting, Mr. Johnson was told to stop making complaints about discrimination to his training manager. *Id.* at ¶¶ 17, 50.

Less than one month later, on May 7, Mr. Johnson requested to be transferred to a different department due to the racial harassment he was experiencing. *Id.* at ¶¶ 19, 52. Two days later, Mr. Johnson filed a written complaint with the HR manager that he was facing racial discrimination and had made previous complaints to management. *Id.* at ¶¶ 20, 53. Less than two weeks later, Mr. Johnson made another written complaint to HR regarding racial comments and harassment made by Mr. Brown to Mr. Johnson. *Id.* at ¶¶ 21, 54. Mr. Johnson was placed on "Step 1 Coaching," following his complaints, but Defendant took no action against Mr. Brown. *Id.* at ¶¶ 22, 55.

Six days later, Mr. Johnson found a drawing of an iron cross (a Neo-Nazi symbol) in his work area, which he promptly reported to HR. *Id.* at ¶¶ 23-24, 56-57. HR took no action and did not investigate the drawing. *Id.* at ¶ 58. Mr. Johnson again requested a transfer and was denied. *Id.* at ¶¶ 25, 59.

On June 15, 2022, Mr. Johnson contacted Defendant's Ethics Helpline to report the racial harassment. *Id.* at ¶¶ 26, 60. The following day, Mr. Johnson's car was vandalized while at work, which he alleges was the result of overt racial discrimination. *Id.* at ¶¶ 27, 61-62. Though he immediately informed his employer about the vandalism, Defendant took no action regarding the incident. *Id.* at ¶¶ 28, 61. Around this time, Plaintiff

was asked by a coworker whether Plaintiff was "going to be famous like 'A Time to Kill,'"[3] which Plaintiff reported to his managers. *Id.* at ¶¶ 32–33. And on June 16, 2022, a coworker stated to Mr. Johnson, "Here is the jive turkey that sucks c--k."[4] *Id.* at ¶ 30. On July 2, 2022, Plaintiff had a meeting with several supervisors and managers. *Id.* at ¶ 34. At this meeting, he was told he was overreacting and that it is a "young man's game out there and they cannot babysit everyone." *Id.* Plaintiff's schedule was then changed, which resulted in a loss of income. *Id.* Five months later, Plaintiff was terminated on December 2, 2022. *Id.* at ¶ 35.

### B. Allegations of Sexual Orientation Discrimination and Harassment

Starting in early 2022, Mr. Johnson alleges he faced discriminatory conduct at his place of employment based on his being a gay man. *See id.* at ¶ 67. Similar to his race discrimination claim, Mr. Johnson claims that in January 2022, he was not trained properly on account of his sexual orientation and that he did not receive promotion money. *Id.* at ¶¶ 11–15, 69, 70. He also alleges that in March 2022 he was assigned more challenging work duties as a result of making complaints and for taking a leave of absence due to the harassment. *Id.* at ¶ 71. Plaintiff does not allege that he experienced any instances or

---

[3] A quick internet search explains that "A Time to Kill" is a 1996 film where a lawyer defends a black man, named Carl Lee, who is on trial for murdering two white men who raped and attempted to murder his ten-year-old daughter. In the movie, the defendant faces the death penalty before an all-white jury, after being denied a change of venue to a more diverse jurisdiction. The Ku Klux Klan then gets involved and plots to ensure a conviction—with the death penalty imposed—including using terrorism against those involved in the defendant's defense. Carl Lee is ultimately acquitted. *See* WIKIPEDIA, *A Time to Kill (1996 film)* https://en.wikipedia.org/wiki/A_Time_to_Kill_(1996_film) [https://perma.cc/RUX3-H75P].

[4] Though the Amended Complaint pleads this fact as evincing sexual orientation harassment, the Court also reads it as a racial comment based on the origins of the term.

4

made any further complaints of sexual orientation discrimination until June 15, 2022, when he called the Ethics Helpline to complain of harassment based on sexual orientation. *Id.* at ¶¶ 26, 73. Mr. Johnson cites the June 16 vandalism of his car as an instance of overt sexual orientation discrimination, in addition to racial discrimination. *Id.* at ¶¶ 27-29, 74. Also starting June 16, and continuing for an unspecified amount of time, various coworkers made rude, sexually explicit comments that could be construed as being in reference to Mr. Johnson's sexual orientation: one coworker told Mr. Johnson he had a "cute ass"; one stated, "Here is the jive turkey that sucks c--k" (as previously described); and another followed Mr. Johnson around the work place asking Mr. Johnson "[w]hich employees have a nice ass" and whether Mr. Johnson "thought he had a nice ass." *Id.* at ¶¶ 29-31, 76-78. Mr. Johnson reported the first of these comments to his employer. *See id.* at ¶ 29, 76.

## II. MOTION TO DISMISS LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth."). "The complaint must

allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). "The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to present evidence in support of the claim." *Ward v. Arkansas Dep't of Fin. & Admin.*, 2020 WL 4032138, at *2 (W.D. Ark. July 16, 2020) (citing *Nusku v. Williams*, 490 U.S. 319, 327 (1989)).

The Supreme Court and Eighth Circuit have made clear that a plaintiff need not plead a prima facie case for discrimination in order to state a plausible claim for relief. *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)). Rather, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Id.* (citation omitted).

> [A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

*Id.*

## III. DISCUSSION

The Amended Complaint is not a model of clarity, and unfortunately, Plaintiff's response brief does not provide much aid. To start, the Amended Complaint only contains claims for Racial Discrimination under Title VII and Sexual Orientation Discrimination

6

under Title VII.[5] However, the facts pleaded and claims made indicate that Mr. Johnson intended to plead a hostile work environment theory and a retaliation claim in addition to disparate treatment discrimination. In fact, the Amended Complaint specifically states that Defendant's failure to "remediate Plaintiff's claims. . . create[ed] a hostile work environment," see Doc. 26, ¶¶ 63, 79, and that certain actions were taken in retaliation. Id. at ¶¶ 55, 71. Moreover, based on the Motion to Dismiss, Defendant construed the Amended Complaint as pleading a hostile work environment theory and, possibly, retaliation. Accordingly, the Court will address whether Mr. Johnson states a plausible claim for relief for hostile work environment, disparate treatment discrimination, and retaliation.

### A. Hostile Work Environment

#### *1. Legal Standard*

"Title VII [ ] prohibits an employer from subjecting its employees to a hostile work environment 'because of such individual's race, color, religion, sex, or national origin.'" *Al–Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005) (quoting 42 U.S.C. § 2000e-2(a)(1)). To make out a claim for a hostile work environment under Title VII, a plaintiff must allege the following: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was because of his membership in the protected group; (4) the harassment affected a term, condition, or privilege of his

---

[5] Discrimination and harassment on the basis of sexual orientation violate Title VII's prohibition on sex discrimination. See *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 683 (2020) ("In Title VII, Congress adopted broad language making it illegal for an employer to rely on an employee's sex when deciding to fire that employee. We do not hesitate to recognize today a necessary consequence of that legislative choice: An employer who fires an individual merely for being gay or transgender defies the law.").

employment; and (5) his employer knew or should have known of the harassment and failed to take prompt and effective action. *See Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 540 (8th Cir. 2014) (citations omitted); *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir. 2007). Harassment affects a term, condition, or privilege of employment when it is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Clay*, 754 F.3d at 540 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In determining whether a work environment is hostile, courts look to the totality of the circumstances. *LeGrand v. Area Res. for Cmty. & Human Services*, 394 F.3d 1098, 1102 (8th Cir. 2005).

The standards for making out a federal claim for hostile work environment are demanding. *Fuller v. Fiber Glass Sys., LP*, 618 F.3d 858, 863 (8th Cir. 2010). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Al–Zubaidy*, 406 F.3d at 1038 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see LeGrand*, 394 F.3d at 1101 (A hostile work environment requires harassment that is "so intimidating, offensive, or hostile that it poisoned the work environment." (internal quotation marks omitted)). The Eighth Circuit and Supreme Court further instruct that, in assessing whether there was a hostile work environment, a court may look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the

8

'terms and conditions of employment.'" *Id.* at 1039 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

Whether the discriminatory conduct created a hostile work environment is both an objective standard and a subjective standard, meaning the Court must view the conduct as an objective person would and as Mr. Johnson actually did. *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 910 (8th Cir. 2006). The standard laid out above "does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 806 (8th Cir. 2013) (quoting *Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944, 953 (8th Cir.2011)).

### 2. *Application of Hostile Work Environment Law to the Allegations in the Amended Complaint*

#### i. *Racially Hostile Work Environment*

Though the standard for a hostile work environment claim is demanding, Mr. Johnson has alleged sufficient facts to state a plausible claim for a racially hostile work environment at the motion to dismiss stage. According to his Amended Complaint, he is a black man, so he is a member of a protected class (element one). He has alleged that he was subjected to unwelcome harassment for at least three months (March 2022 to June 2022)—including at least seven instances from which the Court can infer comments driven by racial animus were made to him by his coworkers[6] and during which time an

---

[6] Mr. Johnson alleges that between March 17, 2022, and May 21, 2022, he made five reports to his managers for continued racial harassment—each of these reports alleges a specific date it was made, and some allege the specific coworker who made the comment or the specific manager to whom the comment was reported. *See* Doc. 26, ¶¶ 15, 16, 19, 20, 21. He further alleges that, in June, he was asked whether he was going to be famous like "A Time to Kill" and was referred to as a "jive turkey," which could

9

iron cross was drawn in his work area. See Green, 459 F.3d at 911–12 (finding eight alleged instances of racially insensitive terms in a three-month span sufficiently frequent).

While Mr. Johnson's description of the comments as "racial" could be deemed conclusory and, thus, unable to survive a motion to dismiss, these allegations are bolstered by the more specific allegations that Mr. Johnson found an iron cross drawn in his work area, that his coworker asked him if he was going to be famous like in "A Time to Kill," and that a coworker referred to him as a "jive turkey."[7] When taken together, the Court finds it is plausible that the unwelcome harassment that Mr. Johnson allegedly experienced was tied to his membership in a protected class.

Defendant primarily disputes whether Mr. Johnson sufficiently pleaded the fourth element—that the conduct was so pervasive and severe it affected the terms, conditions, or privileges of his employment. The Court finds that Mr. Johnson has sufficiently pleaded this element. The allegations that Mr. Johnson reported multiple instances of racial comments, including specific dates and people involved, allow the Court to make reasonable inferences of pervasiveness. Additionally, the more specifically pleaded incidences indicate a level of severity that is sufficient at the motion to dismiss stage. For example, as a symbol of racial hatred, the iron cross could plausibly be seen as

---

plausibly insinuate racial animus—at least to the extent they make it more plausible that other racial remarks were made, resulting in the many complaints. See Doc. 26, ¶ 30, 32; see also supra note 3. Thus, the Court can reasonably infer that there were plausibly seven instances of racially motivated comments across the span of three months.

[7] Mr. Johnson also asserts that his car was vandalized while parked at work, which he believes was overtly an act of racial and/or sexual-orientation discrimination. There are no facts pleaded about the nature of the vandalism, that he was in an employee-only parking lot, or who the vandal was. Therefore, the Court cannot reasonably infer that the vandalism was racially motivated.

threatening.[8] Though none of these would be sufficient alone, together they raise Mr. Johnson's pleadings above the plausibility threshold. Moreover, he alleges that he had to take a medical leave of absence due to the harassment, see Doc. 26, ¶ 47; that he requested to be transferred to a different department at least twice, see id. at ¶¶ 52, 59; and that his schedule was changed resulting in a loss of income, see id. at ¶ 34. From these facts, it is plausible that the harassment unreasonably interfered with Mr. Johnson's work performance.

Lastly, Mr. Johnson has pleaded that Defendant knew about the harassment. Mr. Johnson alleges that he made multiple complaints regarding the racial comments, see, e.g., id. at ¶¶ 48, 49, 51, 53, 54, 60; met with managers at least twice, see id. at ¶¶ 34, 50-51; reported the drawing of the iron cross, see id. at ¶ 57; contacted the Ethics Helpline to report the racial harassment, id. at ¶ 60; and reported the "A Time to Kill" comment, id. at ¶ 33. Mr. Johnson asserts that Defendant undertook no efforts to investigate or remediate any of his concerns. It is thus plausible, based on the facts alleged, that Mr. Johnson satisfies element five.

In arguing that Mr. Johnson has failed to state a claim, Defendant analogizes several cases. As an initial matter, most of the cited cases were decided on summary judgment, not a Rule 12(b)(6) motion to dismiss. For example, Defendant points to *Bainbridge v. Loffredo Gardens, Inc.*, where the Eighth Circuit held that racially offensive remarks about people of Asian descent made monthly for two years were insufficient to

---

[8] It is also possible that the "A Time to Kill" comment was intended to be threatening, considering the racially violent themes in the show. However, the Court also notes that Mr. Johnson shares the same name as the main character and that the plot ends with justice for Carl Lee when he is acquitted. The Court simply lacks sufficient factual allegations to determine one way or another.

11

establish a hostile work environment. 378 F.3d 756, 759 (8th Cir. 2004). In *Bainbridge*, however, it was the plaintiff's wife who was in the protected class, and the comments were not actually made to or about the plaintiff or his wife. *Id.* at 759–60. Further, though the overall quantity may be lower, the pleaded facts suggest comments in this case were made more frequently than in *Bainbridge*. Defendant's citation to *Canady v. Wal-Mart Stores, Inc.*, is also distinguishable. 440 F.3d 1031, 1035 (8th Cir. 2006). There, a supervisor made two insensitive remarks that could be indicative of racial animus, but when the plaintiff complained, the supervisor apologized and did not repeat the statements again. *Id.* at 1035. Moreover, the comments in *Canady* were not tinged with the same threatening tones present in this case. *Singletary v. Missouri Department of Corrections* is similarly distinguishable, as in that case "none of the comments were made directly to [the plaintiff]," and "when supervisors learned of one incident, the responsible employee was demoted." 423 F.3d 886, 893 (8th Cir. 2005).

Therefore, when accepting the facts as true and making reasonable inferences in Mr. Johnson's favor, the Court finds that Mr. Johnson has stated a plausible claim for relief for hostile work environment based on race.

The Court wishes to note, however, that this is a close call. The Court's discussion above is not meant to suggest that Mr. Johnson need only prove those allegations pleaded to survive later stages of this suit. Rather, at this stage, the Court uses the required elements as a "background against which a plausibility determination should be made," i.e., a "prism," and concludes that Mr. Johnson has "plausibly suggest[ed]" he has the right he claims. *See Blomker*, 831 F.3d at 1056 (citations omitted). At later stages like

summary judgment, Mr. Johnson will have to offer evidence sufficient to create an issue of fact on each element, which will be a high bar in light of the Eighth Circuit's precedent.

### ii. Hostile Work Environment Based on Sexual Orientation

Unlike Mr. Johnson's claim for a hostile work environment based on racial harassment, the Amended Complaint does not plead a plausible claim for relief as to a hostile work environment based on sexual orientation. The Court acknowledges that, based on the pleadings, Mr. Johnson's coworkers made disrespectful and inappropriate comments. The Court also notes that, if true, it is likely that Mr. Johnson was harassed by his coworkers. However, to survive a motion to dismiss, the complaint must state a plausible claim for relief, and a claim for hostile work environment against an employer requires that the harassment be pervasive and severe.

Here, Mr. Johnson has pleaded that he is a gay man, so he is a member of a protected class. He also pleaded that he was subject to unwelcome harassment when his coworkers made sexually explicit, degrading remarks in June 2022. While it is not entirely clear that all of the comments were made because Mr. Johnson is gay, it is certainly plausible that all three comments were made with homophobic intent. It is less clear how the vandalism to his car is connected to his membership in a protected class.[9] Even without the vandalism, however, Mr. Johnson has successfully pleaded elements one, two, and three.

The trouble here is whether the harassment affected a term, condition, or privilege of his employment. In pleading his racial harassment claim, Mr. Johnson alleged facts from which the Court could reasonably infer that ongoing racially discriminatory

---

[9] *See supra* note 7.

13

comments were made to Mr. Johnson for at least three months, including two specific instances that could be seen as threatening. Here, the distinct instances of sexual orientation harassment boil down to three comments all made around the same time. Though certainly distasteful and unpleasant, the comments alleged do not carry the same threatening tones as the incidents of racial harassment alleged; thus, they do not carry the same severity. Rather the isolated comments were merely off-handed offensive utterances. Additionally, unlike his racial harassment claim, for five of the seven months at issue, Mr. Johnson does not allege any instances of sexual orientation harassment or that he made any reports of such during that time. In fact, a reasonable reading of the Amended Complaint suggests that the three sexually explicit comments were made within a relatively short timeframe. This cuts against pervasiveness. Therefore, the harassment based on sexual orientation does not plausibly amount to harassment that was so pervasive and severe that it would affect Mr. Johnson's employment.

Because Mr. Johnson did not plead facts that allege that the harassment based on sexual orientation was plausibly pervasive or severe, he has failed to state a claim for hostile work environment on the basis of sexual orientation.

### B. Race & Sex Discrimination

#### *1. Legal Standard*

Under Title VII, "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C.A. § 2000e-2(a). To prove a claim for discrimination, a plaintiff may either present direct evidence of the discrimination or make out a *prima facie*

case under the *McDonnell Douglas* burden-shifting framework, in which a plaintiff must show that: "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Eighth Circuit instructs that, at this stage, the Court must use this framework as a "prism to shed light upon the plausibility of the claim." *Blomker*, 831 F.3d at 1056 (citations omitted).

### 2. Application of Discrimination Law to the Allegations in the Amended Complaint

To survive a motion to dismiss, a complaint must state more than mere conclusory allegations. Here, Mr. Johnson makes two allegations that could possibly support a claim for discrimination: that he made a written complaint on January 6, 2022, that he was not being trained properly due to his race and sexual orientation, and that on January 29, 2022, he made a written complaint that he did not receive promotional pay that he was entitled to and had applied for. (Doc. 26, ¶¶ 11-14). With regard to the training, Mr. Johnson does not plead any facts from which the Court can infer how the lack of training was at all connected to his race or sexual orientation other than the conclusory statement that it was. And regarding the promotional pay, Mr. Johnson does not even make the conclusory allegation that failure to receive the pay was due to his race or sexual orientation. He merely alleges that he filed a complaint that he did not receive it. Thus, to

the extent Mr. Johnson makes a claim for discrimination, the Court dismisses such claims for failure to state a claim under Rule 12(b)(6).

### C. Retaliation

#### *1. Legal Standard*

Under Title VII, it is unlawful for an employer to discriminate against an employee because that employee has opposed the employer's discriminatory employment practice. 42 U.S.C. § 2000e–3(a).

> To prove a retaliation claim, a plaintiff must show (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events. A plaintiff need not establish the conduct which [he or] she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying conduct violated the law.
>
> The defense can rebut a retaliation claim by showing a non retaliatory reason for the adverse employment action. If the defendant can show a legitimate reason, the plaintiff must show that the given reason was only a pretext for discrimination.

*Green*, 459 F.3d at 913–14 (citations and internal quotations marks omitted).

Reporting suspected harassment and discrimination "are the very essence of protected activity under Title VII." *Id.* at 914. In the retaliation context, an adverse employment action is one "that a reasonable employee would have found . . . materially adverse," meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Tisdell v. McDonough*, 2023 WL 2486083, at *3 (8th Cir. Mar. 14, 2023) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Lastly, "retaliation must be the 'but for' cause of the adverse employment action." *Blomker*, 831 F.3d at 1059.

16

### *2. Application to the Allegations in the Amended Complaint*

In its Motion to Dismiss, Defendant primarily focuses on Mr. Johnson's allegation that he was terminated in December 2022, five months after his last alleged complaint. Defendant correctly notes that the Amended Complaint makes no allegation—not even a conclusory one—that the termination was in any way connected to protected activity. To say this alone entitles Defendant to dismissal, however, overlooks additional facts pleaded by Mr. Johnson. Mr. Johnson alleges that he received harsher work duties following his initial complaints made in January. (Doc. 26, ¶¶ 47, 71). Mr. Johnson also alleges that on July 2, 2022, he had a meeting with several managers regarding his prior complaints. *Id.* at ¶ 34. In that meeting he contends that he was told he was overreacting and that it is a "young man's game out there and they cannot babysit everyone." *Id.* And Mr. Johnson alleges that his schedule was then changed resulting in a loss of income. *Id.* A reasonable reading of the Amended Complaint shows that Mr. Johnson claims that he took protective action by filing complaints of discrimination and harassment on several occasions prior to that meeting. When taken as true, these allegations show that it is plausible that Mr. Johnson made a complaint of discriminatory conduct based on a good faith, reasonable belief. It is further plausible that he suffered a materially adverse employment action by being assigned more difficult work and by having his schedule reduced and losing income. Further, based on the timing and context of the July 2 meeting, it is plausible that his engagement in protected activity was the but-for cause of the adverse action.

While the Court finds the pleadings state a plausible claim for relief, the Court again notes that the burden on Mr. Johnson at summary judgment will be higher—he will have to present evidence sufficient to create a fact issue as to each element of this claim.

## IV. CONCLUSION

Accordingly, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Mr. Johnson's claims for a racially hostile work environment and retaliation will survive, but his claims for racial discrimination, sexual orientation discrimination, and hostile work environment based on sexual orientation are dismissed.

**IT IS SO ORDERED** on this 28th day of August, 2024.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE